The National Power Machinery Company v. Commissioner.
National Power Mach. Co. v. Commissioner
Docket No. 3285.
United States Tax Court
1944 Tax Ct. Memo LEXIS 119; 3 T.C.M. (CCH) 934; T.C.M. (RIA) 44294; September 14, 1944
*119 Henry S. Gottfried, Esq., 1114 Hippodrome Bldg., Cleveland, O., for the petitioner. Thomas F. Callahan, Esq., for the respondent. HILL Memorandum Findings of Fact and Opinion HILL, Judge: This proceeding is for the redetermination of deficiencies for the year 1941 as follows: Income tax, $10,330.98, declared value excess profits tax, $6,134.78, and excess profits tax, $32,443.92. The sole issue is whether or not the respondent erred in disallowing certain amounts paid the petitioner's two principal officers as compensation for their services during 1941. Other adjustments to petitioner's income made by the respondent have been conceded. The tax returns of petitioner for the year 1941 were filed with the collector for the 18th district of Ohio. Findings of Fact Petitioner is an Ohio corporation with its principal office and place of business at 1914 Scranton Road, Cleveland, Ohio. It was incorporated in 1918 and succeeded to a partnership operated by two brothers, S. W. Kohn and B. R. Kohn. In August 1941 these men changed their name to "Kern". For many years petitioner was engaged in the salvage and junk business, including the salvaging of small motors. Towards the end of 1940 *120 petitioner entered into the heavy machinery field and engaged in the buying and selling of steam driven generating units, steam turbine units, rotary converters, rotary generator sets, diesel generating units, and other heavy machinery. During 1941 B. R. Kern was president, treasurer and a director and at all times during that period was the owner of 54 percent of petitioner's stock. S. W. Kern was vice-president, secretary and a director during this time and at all times mentioned owned 27 1/2 percent of its stock. He was an electrical engineer. J. W. Kohn, a third brother, owned 17 1/2 percent and G. W. Rosenberg, a director, owned 1 percent of petitioner's stock. J. W. Kohn was not active in the business but took a shareholder's interest in the conduct of petitioner's affairs. Sometime during 1941 the capital of petitioner was increased from $10,000 to $50,000 but the respective interests of the stockholders were not changed. B. R. Kern and S. W. Kern devoted their entire time to the business of petitioner and during 1941 worked long hours every day of the week in developing customers' contacts, ferreting out machines for sale, and otherwise making arrangements for the buying *121 and selling of this type of machinery. Prior to 1941 the average working day of each of these men was from 6 to 8 hours. In 1941 this amount of time was doubled. L. J. Kern, son of B. R. Kern, was employed by petitioner as a "spotter" in locating and reporting on available machinery in various parts of the country. He was an electrical engineer but had no authority to buy or sell on behalf of petitioner. Total sales of petitioner for 1941 amounted to $644,494.33. Total sales of petitioner in 1940 amounted to $168,709.36. The compensation paid by petitioner to B. R. Kern and S. W. Kern for the years 1937 to 1941, inclusive, is as follows: B. R. Kern
S. W. Kern
1937
$ 5,000.00
$10,000.00
1938
7,500.00
7,500.00
1939
4,000.00
7,500.00
1940
15,000.00
14,500.00
1941
58,709.21
52,257.68 The only dividend ever paid was during 1941 in the sum of 6 percent based on petitioner's earnings for 1940. At a special meeting of the board of directors held April 8, 1941, the directors, B. R. Kern, S. W. Kern and G. W. Rosenberg, authorized a salary for B. R. Kern of $20,000 annually plus 6 percent of the gross sales of petitioner. B. R. Kern did not vote on this resolution. *122 At the same meeting, S. W. Kern was voted a salary of $20,000 plus 5 percent of petitioner's gross sales. S. W. Kern did not vote on this resolution. The resolutions authorizing the compensation of B. R. Kern and S. W. Kern are as follows: "Whereas, B. R. Kohn, as President and Treasurer of The National Power Machinery Company has initiated a new technique in the purchase of electrical machinery, and "Whereas, this technique has been applied to the new policy of the Corporation, which has changed from small motor dealing and junk salvaging to the handling of large electrical machines, and "Whereas, B. R. Kohn has traveled extensively to purchase more machines and larger machines and in many cases secured the release of equipment for resale prior to schedule, and "Whereas, this new technique as applied by B. R. Kohn has been a major factor in consummating more business in the first quarter of 1941 than for the entire year of 1940, and "Whereas, the best interests of the Corporation will be served by offering an incentive to B. R. Kohn to continue his untiring efforts to increase the business and profits of the Corporation. "Therefore, be it resolved that B. R. Kohn be voted a *123 salary of $20,000.00 per year, plus 6% of the gross sales of the Corporation for the year 1941. * * * * *
"Whereas, S. W. Kohn, as Vice President and Secretary of this Company has traveled extensively in order to personally close large deals and has cooperated faithfully with the President to make the new policy of the Company successful, and "Whereas, S. W. Kohn, by such cooperation and by his knowledge of Electrical installations and his special ability in applying this knowledge in the sale of machinery, has increased machinery sales for the first quarter of 1941 exceeding the entire year of 1940, and "Whereas, the volume of business done by The National Power Machinery Company and the profits derived therefrom, depend not only on the efforts of the President but also on the cooperation, ability and application of S. W. Kohn, and "Whereas, in the opinion of this Board, the best interests of this Company will be served by offering the same type of incentive to S. W. Kohn as had already been voted to B. R. Kohn. "Therefore, be it resolved that S. W. Kohn be voted a salary of $20,000.00 per year plus 5% of the gross sales of the Corporation for the year 1941." In September *124 1941, B. R. Kern met H. Kahn, the treasurer of Consolidated Products Co., a New York concern, for the first time although Kahn had known of the Kerns through trade publicity and articles appearing in trade journals. At that time Kahn told B. R. Kern that Consolidated wanted him or his brother, S. W. Kern, to handle Consolidated's power equipment department. On October 9, 1941, Kahn wrote B. R. Kern as follows: "In line with my conversation with you while you were in my office recently, I would like to have you or S. W. think over the proposition I made to you to work for our Company. "We are in urgent need of someone qualified as yourselves in the purchase and sale of power equipment, particularly in the complete field as indicated in the write-up the Surplus Record gave you boys in their September issue. "The salary mentioned between $20,000.00 and $25,000.00 per year, plus a commission of say 7 1/2% of the total sales, should make it attractive for either you or S. W. to give it serious consideration. "Please advise when you can come to New York to discuss the matter further." On October 11, 1941, B. R. Kern advised Kahn that the proposition was not acceptable to S. W. Kern *125 or himself. The petitioner reported a net income for 1941 of $99,696.19. The salaries of $20,000 allowed B. R. Kern and S. W. Kern by the respondent are reasonable compensation for the services rendered by them to petitioner during the year 1941. Opinion The sole question for our determination is whether or not respondent erred in disallowing $70,966.89 of a total of $110,966.89 deducted by the petitioner in its income and excess profits tax returns for 1941 as compensation for services rendered by B. R. Kern and S. W. Kern. The contention of the petitioner is that the increased sales were the result of longer working days on the part of these men, a new business technique invoked by B. R. Kern and their experience and contacts generally. It is pointed out that a competitor, Consolidated Products Company, was paying its president upwards of $50,000 annually based on salary and a percentage of gross sales. It is also pointed out that this concern through its treasurer, H. Kahn, offered either B. R. or S. W. Kern a position with Consolidated at a salary of $20,000 to $25,000 annually plus 7 1/2 percent of gross sales and that if this offer had been accepted by either of them, *126 his income would have been thereby greatly increased. The dividend payment and the large earnings of petitioner after the payment of dividends and salaries are offered in support of its position. It is further argued that the resolutions of the board of directors of April 8, 1941, create a presumption of reasonableness and that the respondent has not overcome this presumption. The respondent argues that the petitioner is a family corporation, that B. R. and S. W. Kern are brothers and own over 80 percent of petitioner's stock, that they are also directors and that, therefore, their dealings with petitioner are subject to careful scrutiny. He further argues that there is no evidence of what would be reasonable compensation for the services rendered by the Kerns and no explanation of what their duties and services were. He points out that as stockholders the Kerns would get the profits in any event and states that the tax consequences of petitioner's action was the dominating factor in the setting up of the compensation arrangement. He also urges that the conversion of this country's industry to a war footing made the selling of power machinery and heavy equipment easy and that incentive *127 plans and the long established contacts of the Kerns meant little or nothing. The petitioner has the burden of proving the reasonableness of the salaries paid and that these amounts were paid as compensation for services actually rendered. ; ; . When it appears that the recipients of corporate compensation are also the owners and directors the evidence must be sifted carefully to determine whether the so-called compensation for services is not in reality a distribution of profits. , and cases cited; . The correctness of the action of the respondent in this type of proceeding is a question of fact. . His determination is prima facie correct and to refute it there must be evidence as to the value of the services rendered by the recipients and the amounts paid in similar businesses *128 for similar work. , (reversed on other grounds, ); ; The resolution of the board of directors is entitled to weight but it is not conclusive and where a family corporation is involved its value is lessened. ; The testimony offered as to the exact nature of the services rendered by the Kerns or the activities engaged in by them was hazy. No attempt was made to segregate the sales and purchases made by either of them and an adequate description of their respective duties and responsibilities was lacking. The "new technique" was not explained in any way. There was no evidence as to the size of the business of petitioner except the dollar volume of sales for 1940 and 1941. The number of its employees, the complexity and scope of its operations were not before us. No evidence was introduced *129 as to the amount generally paid by similar concerns for similar work. In family corporations, such as petitioner, one of the criteria in determining the reasonableness of salaries is whether a stranger's services would be worth the amounts claimed and whether a similar concern or a competitor would place a like value on such services. ;;, affirmed , certiorari denied . The negotiations (if they may be called that) with Kahn of Consolidated standing alone are unimportant, as is the amount paid Consolidated's president. No evidence was introduced as to the comparable sizes of petitioner and Consolidated. A description of the duties, responsibilities or other activities of the president of Consolidated is lacking. The sales volume of Consolidated, the number of its employees, the size of its operations would have been helpful in comparing these businesses to determine if the amounts paid by Consolidated were commensurate *130 with the compensation paid by petitioner. See The discussion with Kahn and his subsequent letter of October 9, 1941, in our opinion, are not sufficient to establish the value of the Kerns' services. The salaries of the Kerns prior to 1940 were relatively small. While the earning record of petitioner for the years immediately preceding 1941 was not before us, petitioner's dividend record is not impressive. One dividend of $6 a share in the face of earnings for 1941 of nearly $200 a share is not a sufficient showing of a dividend paying policy which could rebut the contention of the respondent that the earnings of petitioner were distributed in another fashion. We are not satisfied that the contract of April 9, 1941, was the result of arm's length bargaining between the petitioner and the Kerns to secure their services. B. R. Kern testified that the tax consequences of this arrangement were not discussed. His statement is not contradicted but we can not refrain from pointing out that the tax savings features should have been apparent without discussion. The respondent has allowed B. R. Kern and S. W. Kern $20,000 each as *131 compensation for the year 1941. These sums are not insignificant and compare very favorably with their compensation for 1940 and earlier years. In spite of the longer hours worked by the Kerns, the increased sales and the change in the character of the business urged by the petitioner, we can not say that the respondent's determination was in error. Moreover, it is common knowledge that a greatly increased demand was created for iron, steel and other metal scrap and for a wide variety of used metal machinery as a result of the acceleration of the defense program in 1941 and subsequent years. It is not improbable, therefore, that the increase in volume of business in the taxable year over that of 1940 was largely due to such increased demand, availed of by petitioner through increasing its capital and broadening its scope of operation. To compensate its executive officers for their added responsibility and work thus entailed petitioner increased the salaries (exclusive of commissions) of B. R. Kern and S. W. Kern from $15,000 and $14,500, respectively, to $20,000 each. We are not convinced that the disallowance by respondent of a deduction for the compensation of the officers named *132 in excess of $20,000 each was erroneous. On the other hand, it appears to us from the whole picture presented by the evidence that a salary of $20,000 each to the Kerns was not less than the reasonable value of their services. Accordingly, the determination of the respondent is sustained. Decision will be entered for respondent.